SAMUEL H. READ *vs*. THE ATLAS MOTOR CAR COMPANY.

Third Judicial District, Bridgeport, April Term, 1910,
HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

The terms of a contract which is partly oral and partly written, if in
dispute, are to be determined by the jury as a question of fact,
under proper instructions from the court; and their determination,
unless manifestly and palpably against the evidence, ought not
to be set aside by the trial court.

The evidence in the present case reviewed and the action of the trial
court, in setting aside the verdict, reversed.

Argued April 12th—decided June 14th, 1910.

ACTION to recover damages for breach of contract
in the sale and delivery of an automobile, brought to the
Superior Court in New Haven County and tried to the
jury before *George W. Wheeler, J.;* verdict for the de-
fendant, which the trial court set aside as against the
evidence, from which the defendant appealed. *Error;
judgment to be rendered for defendant on the verdict.*

*Leonard M. Daggett,* for the appellant (defendant).

*Livingston W. Cleaveland* and *Frederick L. Perry,* for
the appellee (plaintiff).

ROBINSON, J. The complaint in this case alleged
that the plaintiff ordered of the defendant a four cyl-
inder standard Atlas touring-car, with complete equip-
ment, for the sum of $2,400, to be delivered at a speci-
fied date in June, and in compliance with the agreement
paid $480 thereon; and that the defendant failed to
deliver the car in pursuance of the agreement.

The defendant admitted the making of a contract;

that the negotiations and agreements of the parties were, up to June 23d, 1908, the date of plaintiff's Exhibit J, as stated in the plaintiff's exhibits; and that the $480 was paid by the plaintiff and was still retained by the defendant; but alleged that later changes were made in the agreement, so that it finally became a question of fact upon all the evidence what the contract between the parties was.

Originally the car was to have been delivered in June, 1908, but this was not done, and the plaintiff waived this omission and failure. It appeared that there was a delay in delivering the car until July 12th, when it was sent to New Haven, and the defendant's agent tested it, and the plaintiff's son operated it about five days under instruction from the defendant's agent. It appears to have been conceded that at this time the car did not run satisfactorily and was sent back to the factory, at Springfield, causing further delay; and thereupon the plaintiff insisted that the car must be delivered by July 25th, and on July 21st the defendant notified the plaintiff that it expected to have the car ready before the week was over, and did in fact send it to New Haven the following Sunday. Again it seems to be the uncontradicted evidence that the car was not in a satisfactory condition, and was returned to the defendant's factory by Mr. Denison, the agent. On July 28th the plaintiff informed the defendant that he was about to leave town to be away until about September 5th, and that during that time if the car was put in perfect running condition with certain additional changes enumerated, and it was demonstrated to him to be right in every respect and in first-class running order, he was willing to accept the car; otherwise not.

The defendant, on August 4th, it appears, replied to the plaintiff's letter of July 28th, and accepted this offer.

On August 5th the plaintiff wrote the defendant that "under no condition would he accept the car." August 7th the defendant replied to this saying they expected to have the car in such shape when the plaintiff returned that he would be glad to accept it.

On the plaintiff's return, in September, the car was sent down to New Haven in charge of a demonstrator, the plaintiff was notified of its presence, and a party, including the plaintiff, went to New York in it, and returned to New Haven on September 12th.

It appears to have been the plaintiff's claim that on this New York trip the car did not fulfil two of the claimed requirements of the contract, to wit: as to its getting overheated, and as to the fact that it could travel but fifty miles without being resupplied with water.

An examination of the testimony on these two points, pro and con, reveals the fact that the testimony was conflicting, and that it was an important question of fact for the jury to determine. The defendant claimed that nothing of the kind was the matter with the car, and that never at any time did these matters enter into or form any feature of the contract; also that the New York trip test was an entire success. The plaintiff claimed the contrary.

After this New York trip a conversation by telephone took place between the plaintiff and Mr. Morse, the defendant's treasurer, in consequence of which the car was again sent to New Haven and a trip taken in it to Waterbury, on September 17th, by the plaintiff. It seems to be conceded that the car was at this time offered to the plaintiff for his acceptance, but he refused to accept it. Whether or not he was justified in this refusal depended upon how certain conflicting claims of fact were determined by the jury.

The plaintiff claimed that the contract was as stated

in Exhibits A and B and the catalogue, as modified by certain letters of July 19th and July 28th.

The defendant claimed, and offered evidence to prove, that the terms of the contract were finally reduced to something different from those appearing in the papers offered by the plaintiff to support his claim. A reading of the somewhat lengthy record discloses that the plain issue between the parties was whether the terms of the contract were what the plaintiff claimed them to be, or whether they were what the defendant insisted and claimed to have proved, and in this was involved the very vital question of the character of that telephonic conversation, whether the plaintiff stated it correctly or whether Mr. Morse did, and also involved the real condition of the car on the New York testing trip, and also on the Waterbury trip, and whether it was equipped as the defendant agreed to equip it, and in good running order.

These were questions which the trial judge plainly and properly submitted to the jury, saying, among other things, to the jury: "But if you find, as I have stated to you, that the telephone communication was in accordance with what Mr. Morse testified to, namely, that this plaintiff agreed to accept that car provided that it performed as well as it did on the New York trip, and you find in fact that it did perform as well as on the New York trip, your verdict ought to be for this defendant."

These were questions of pure fact, and whether the jury took one view or another clearly depended upon whether they gave credence to the testimony offered on the one side or to that offered on the other.

The jury found these facts adversely to the plaintiff, and returned a verdict for the defendant. The court set this verdict aside as against the evidence. It is only when the verdict is manifestly against the evidence in

the case—so much so as to indicate that the jury was swayed by passion, ignorance, partiality, or corruption—that it should be set aside on that ground and a new trial ordered. *Lewis* v. *Healy,* 73 Conn. 136, 138, 46 Atl. 869.

It is perfectly apparent that the testimony in the case before us was conflicting: a careful reading of it reveals this.

We think it is quite evident that there was a sound, reasonable, and intelligent basis for the verdict reached by the jury. We think there was evidence from which the jury might honestly and fairly reach the conclusion they did, in all respects, including the running condition of the car. We see nothing to indicate that they did not act fairly and conscientiously.

There was error in setting aside the verdict. The decision setting it aside is reversed, and the Superior Court is directed to render judgment upon the verdict for the defendant.

In this opinion the other judges concurred.