### ERNESTINE WOLFE
vs.
### THE WALLINGFORD BANK & TRUST CO., ET AL.

Superior Court       New Haven County       File #51576

Present:  Hon. PATRICK B. O'SULLIVAN, Judge.

Robert J. Woodruff,        Attorney for the Plaintiff.

Belford & Manfreda,        Attorneys for the Defendant.

**MEMORANDUM FILED MAY 17, 1937.**     124 Conn. 507.

O'SULLIVAN, J.   The plaintiff's version of the sequence of events culminating in this litigation was, in the main, as follows:

For some time prior to 1935, Ernestine Wolfe, the plaintiff, owned and was in possession of three parcels of land, which were subject to a mortgage held by the defendant, The Wallingford Bank and Trust Company.   One parcel was located entirely within Middlesex County; another, entirely within New Haven County; the other, partly within each County. The first named parcel was her homestead; the second and third were pasture lands.

In 1934, the Bank brought an action to foreclose its mortgage. The suit went to judgment, but, although the day of redemption passed without payment by Mrs. Wolfe of the mortgage debt, she continued to remain upon the homestead. On November 4, 1935, the Bank obtained from the clerk of the court, in which the judgment of foreclosure had been entered, an execution to eject Mrs. Wolfe from the three parcels and cause the Bank to have seizin and peaceable possession of the premises. This execution was delivered for service to the defendant, Trowbridge, a deputy sheriff of New Haven County to whom, among other variously named officers, the process was directed. Thereupon, Trowbridge entered upon the lands located in New Haven County on the theory that Mrs. Wolfe was still in possession of them. However, prior to November 4th, the Bank had conveyed these parcels to third persons. Having completed the formality of this entrance and purporting to act under statutory authority permitting his leaving his own precinct to complete service commenced within it, Trowbridge proceeded into Middlesex County where he found Mrs. Wolfe in possession of the homestead. With helpers hired for the occasion, he removed from the house the plaintiff's furniture and effects which, while being moved to the premises of the plaintiff's son a couple of miles away, became wet from rain falling at the time and otherwise damaged from the careless manner in which the goods were handled. For the result of this negligence as well as of a claimed unlawful use of process by one unauthorized to act within Middlesex County, Mrs. Wolfe has instituted the present action against the Bank and Trowbridge. By an eleventh hour amendment filed during the course of the trial, she sought additional recovery because of a cold caught at the time of being ejected and because she suffered an invasion of her constitutional right of personal security at the hands of the defendants.

This case was tried with a companion one brought by Mrs. Wolfe in her representative capacity as administratrix on the estate of her late husband. The causes of action relied on were identical but recovery was sought solely for damage done to the personal property belonging to the estate.

The jury, which consisted of members of the regular panel augmented by five or six talesmen, returned verdicts in favor of each plaintiff. In one case, they reported a verdict of 3,000, and in the other, 500. As the amounts were not

written out, it was impossible to say, because of the absence of decimal points in the figures, whether they were intended for $3,000. and $500. or $30.00 and $5.00, which latter sums would have more nearly represented fair and adequate compensation. The jury having been counseled to make their verdicts more understandable, returned with an award of $3,000. in the action brought by the administratrix and $500. in that brought by Mrs. Wolfe. With what might be labeled a perfect example of stupidity, the undersigned thereupon committed the inexcusable blunder of accepting the verdicts and discharging the jury without having caught and realized the obvious error of the jury in confusing the verdicts. The ad damnum in the administratrix' case was $500.; the verdict $3,000. The ad damnum in Mrs. Wolfe's case was $3,500.; the verdict, $500.

Some days later, at the suggestion of the court, counsel for the parties entered into a stipulation to obviate this confusion by permitting the captions on the verdicts to be changed. Although this procedure is unusual and, so far as a limited search has disclosed, devoid of support by the authorities, it seems appropriate, in view of the consent of all the parties, to adopt this means of rectifying an unfortunate error on the part of both jury and court.

Motions have now been made to set these verdicts aside.

Once in a blue moon, a jury goes off half-cocked, thus demonstrating anew the fallibility of all human institutions. The outstanding fact is, not that they occasionally err, but rather the frequency of their being right.

At any rate, the moon was blue when these cases were tried. There is no need of a psychologist to explain with reasonable assurance and certainty what motivated twelve men to report verdicts as unfair, unreasonable, and shocking as were these. In all likelihood it was the contrast in the personality of the litigants. Justice always assumes the form of a woman whose eyes are blindfolded. But juries are not so handicapped. On the one hand was the plaintiff, a widow with seven children, a woman of subdued sadness, whose mournful mien, although not pleaded, was the strength of her cause of action. Medieval days have long gone by, but no knight of chivalry ever rushed with greater partisanship to the defense of woman than did this jury to champion the cause of this sorrowful plaintiff. The other party was a bank, an ideal type for the

perfect contrast. It might be added that the poor sheriff was lost in the shuffle, for this became and remained a contest between a poor widow and a rich bank, nor did counsel make any effort to alter these lines of battle. Sympathy might possibly be overlooked as the natural result of human emotion. But where, as in this case, it generated prejudice against another, the elementary dictates of fair play demand action on the part of the Court.

No jury, unless bent on penalizing these defendants, could reasonably have reported such excessive and shocking verdicts. Although plaintiff's counsel in closing his argument asked for a verdict of approximately $200. in the action brought for the estate, as this sum was all that the most favorable aspect of the evidence would permit, the jury reported $500.

In Mrs. Wolfe's individual action, the total damage to her personalty, conceding everything in her favor, was less than $300. The balance of the verdict, $2,700., represented compensation for a cold she caught, the extent of which may be appreciated by the fact that she had to buy some cough medicine for it at a drug store. In addition to this damage, she sought recovery for an invasion to her constitutional right of security. Although she did have a right to be ousted in a lawful manner, it is still perfectly obvious that she had no business remaining on the homestead at all in view of the judgment of foreclosure. And just compensation for the violation of that right could not possibly reach the figures which the jury awarded.

A verdict should be set aside when it works manifest injustice, and the wrong is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they, or some of them, were influenced by corruption, prejudice or partiality. **Levy vs. Bromberg, 108 Conn. 202; State vs. Gorgano, 99 Conn. 103.**

Again it is stated that where a verdict is manifestly against the evidence in the case, so much so as to indicate that the jury were swayed by partiality, it should be set aside. **Amellin vs. Leona, 114 Conn. 478; Dupuis vs. Dupuis, 100 Conn. 96; Carrier vs. Donovan, 88 Conn. 37; Read vs. Atlas Motor Car Co., 83 Conn. 167; Lewis vs. Healy, 73 Conn. 136.**

This case falls within the rule.

Nor is this an instance where remittiturs can be justified, because the defendants never did have a fair trial. An impartial jury might well find that the greatest consideration was extended by Sheriff Trowbridge to Mrs. Wolfe and that the damage was negligible.

Without reciting the testimony submitted by the defendants, all of which was apparently ignored in toto by the jury, it is sufficient to observe that to order remittiturs would be to approve of a partial verdict which was rendered through prejudice and the prejudice will taint the portion as well as the whole.

The verdict in this case is set aside.