[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON DEFENDANTS' MOTION TO STRIKE
Defendant General Motors Corporation, Allison Gas Turbine Division, pursuant to Practice Book section 152, et seq., moves to strike Counts Four and Six of the Revised Complaint dated April 6, 1993, on the ground that they are legally insufficient. Count Four alleges misrepresentation and Count Six alleges a violation of the Connecticut Unfair Trade Practices CT Page 8230-H Act. Defendant claims that they are legally insufficient because the plaintiffs are seeking recovery for commercial loss and, as a result, are limited to the remedies provided by the Uniform Commercial Code.
Plaintiffs, Flagg Energy Development Corp., CCF-1, Inc., and Process Construction Supply, Inc., commenced this action against defendant General Motors Corp. on October 26, 1992. This action arises out of the sale of gas turbine engines manufactured by defendant. Generally, plaintiffs' six-count revised complaint, dated April 6, 1993, alleges that defendant's engines were defective and deficient, and that defendant failed to cure the defects.
Count one sets forth a breach of contract claim, and counts two and three allege breaches of express and implied warranties, respectively. Count four asserts a misrepresentation claim; count five states a claim for breach of a repair and replacement warranty; and count six alleges a violation of the Connecticut Unfair Trade Practices Act. CT Page 8230-I
On April 21, 1993, defendant filed a motion to strike counts four and six of the plaintiffs' revised complaint. Plaintiffs filed a memorandum in opposition on May 7, 1993, and defendant filed a memorandum in reply on July 8, 1993.
A motion to strike tests the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book section 152. When ruling on a motion to strike, the court is restricted to the alleged facts, and it must construe these facts in the light most favorable to the nonmovant. Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073 (1988). If the facts provable under the pleadings would support a defense or a cause of action, the motion to strike must fail. Mingachos v. CBS,196 Conn. 91, 109, 491 A.2d 368 (1985).
Specifically, count four alleges that defendant made express representation to plaintiffs regarding engines, and that defendant should have known that these representations and warranties were untrue. Plaintiffs further allege that defendant made such representations and warranties with knowledge and intent that CT Page 8230-J plaintiffs would rely on them, and that plaintiffs did, in fact, rely to their detriment. Count six asserts that defendant induced plaintiffs to select the engines by making various misrepresentations concerning the engines' fitness for commercial use and fitness for the intended purpose. Plaintiffs allege that defendant never intended to supply plaintiffs with engines that would satisfy plaintiffs' project requirements, and that defendant's acts constitute a violation of the Connecticut Unfair Trade Practices Act.
Defendant maintains that counts four and six are insufficient as a matter of law and should be stricken. Defendant emphasizes that plaintiffs are seeking damages that are commercial in nature; therefore, it argues that plaintiffs are limited to the laws and remedies provided by the Connecticut Uniform Commercial Code. In addition, defendant contends that counts four and six are merely variations of plaintiffs' breach of contract and warranty claims.
Defendant cites several federal district court cases in support of its position, McKernan v. United Technologies Corporation,717 F. Sup. 60, 66 (D. Conn. 1989) (negligence action not maintainable CT Page 8230-K between commercial parties to recover economic damages arising from defective product when no injury other than to product itself); Connecticut Printers, Inc. v. Baker Perkins PMC, Ltd., Civil No. H-86-1507 (PCD), slip op. at 8 (D. Conn., Feb. 1, 1990) (Dorsey, U.S.D.J.) (court grants defendants' summary judgment as to plaintiff's tort and CUTPA claims because these claims are precluded under Connecticut's products liability act and by the common law economic loss doctrine); Stone Safety Corporation v. Rubatex Corporation, Civil No. N-89-286 (TFGD), slip op. at 37, 38 (D. Conn., Jun. 13, 1991) (Latimer, U.S.M.J.) (court concludes that plaintiff's tort and CUTPA claims are a "recasting" of its contract counts, and determines that the UCC provides an adequate remedy for the alleged wrongs, which involve plaintiff's loss of the benefit of the bargain).
In McKernan v. United Technologies Corporation, supra, plaintiffs, purchasers of a helicopter, brought a breach of warranty and negligence action against the manufacturer of the helicopter's frame and the furnisher of the helicopter's engine. Plaintiffs sought damages for downtime incurred as a result of modifications made to the aircraft that were required due to CT Page 8230-L engine overhearing problems. Id., 63. Specifically, plaintiffs alleged economic loss relating to the aircraft's resale, lost profits, labor expenses and increased operating costs. Id.
The court granted defendants' summary judgment motion as to plaintiff's negligence count, concluding that an action alleging harm from a product due to negligence could not be pleaded separately as a common law action in Connecticut, but was only assertable "as part of Connecticut's products liability scheme." Id., 65. The court explained that General Statutes 52-572n(a) permitted recovery for harm caused by a product, and that 52-572m(d) defined "harm" as "`damage to property, including the product itself, and personal injuries including wrongful death.'" The court observed that 52-572m(d) further provided that, "`[a]s between commercial parties, `harm' does not include commercial loss.'" and, it emphasized that 52-572(n)(c) provided that actions "`for commercial loss caused by a product may be brought only under, and shall be governed by title 42a, the Uniform Commercial Code.'" (Emphasis provided by the court). Id. The court characterized plaintiff's claimed losses as "solely commercial losses," and it concluded that 52-572n(c) precluded CT Page 8230-M plaintiff's negligence claim. Id. 66. The court also found additional support for its position in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295 (1986).
In the East River case, the turbines of four ships malfunctioned due to design and manufacturing defects, and the plaintiff brought a products liability action against the defendants, seeking damages for the cost of repairing the ships and for lost income due to the ships' downtime. The Supreme Court held that a commercial party could not maintain a tort suit to recover economic damages arising from a defective product when there had not been any personal injuries or property damage, other than damages to the product, itself. Id. 876. The court emphasized that "[c]ontract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements." Id., 872-73. The court observed that "warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain[,]" and it noted that a warranty action also contained "a built-in limit on liability, wherein a tort action could subject the manufacturer to damages of an indefinite amount." Id., 873-74. CT Page 8230-N
In another district court case, Connecticut Printers, Inc. v. Baker Perkins PMC. Ltd., supra, plaintiff, purchaser of a printing press, brought an action for damages for losses incurred as a result of the product's failure to operate properly. Id. 2. Defendants moved for summary judgment as to plaintiff's negligence, misrepresentation, and CUTPA claims. Defendants argued that plaintiff's claims were merely variations on its contract claims, and that plaintiff's claims for economic losses, resulting from a product's failure to meet its contractual requirements, could be brought only under the Connecticut Uniform Commercial Code. Id.
The court discussed the common law economic doctrine set forth in the East River case, and it noted that the doctrine had been applied in the McKernan case. Id. 6. The court observed that plaintiff's alleged losses were "solely commercial losses, such as lost profits due to substandard operation and downtime, lost raw materials due to faulty operation, and the loss of the benefit of the bargain in that the press was not marketable." Id., 7. The court noted that plaintiff's misrepresentation claim was CT Page 8230-O merely a variation of its contract claims, and, further, that the misrepresentation claims provided the basis for plaintiff's CUTPA claims. Id. 7-8. The court emphasized that economic losses incurred by a commercial buyer were better resolved under contract law, and that plaintiff should not be permitted to escape the UCC's framework for resolving commercial disputes by "recasting their contract claims in other theories." Id., 8. Accordingly, the court held that plaintiff's non-contract claims were precluded by General Statutes section 52-572n(c) and the common law economic loss doctrine. Id. See also, Management Computer Services, Inc. v. Rourke-Eno Paper Co., Inc., 5 CSCR 104, 105
(December 7, 1989, Meadow, J.) (court strikes plaintiff's breach of contract and negligence claims on the ground that the action involves a dispute over a transaction in goods and is governed by the UCC). CT Page 8230-P
Plaintiffs respond that they are not precluded from alleging common law misrepresentation, fraud in the inducement, or CUTPA violations. Plaintiffs argue that the Connecticut Uniform Commercial Code preserves a defrauded party's common law right to noncontractual relief, and that the Connecticut Product Liability Act preserves the common law remedies for fraud in the inducement to contract. In addition, plaintiffs contend that defendant's actions, which constitute common law fraud, misrepresentation, and violation of the Uniform Commercial Code, fall within an established concept of unfairness and constitute a violation of CUTPA.
Plaintiff relies on several Connecticut cases to support its position. See Bridgeport Restoration Co. v. A. Petrucci Construction Co., 211 Conn. 230, 232, 557 A.2d 1263 (1989) (court upholds judgment awarding damages for breach of contract and CUTPA violations in action involving contractor's refusal to honor agreement to award subcontract to plaintiff); Murphy v. McNamara,36 Conn. Sup. 183, 416 A.2d 170 (1979) (violations of CUTPA and UCC found where consumer enters into agreement to lease television with option to purchase at highly inflated price); CT Page 8230-Q Comen v. Udolf, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 25 07 57 (August 21, 1990, Jones, J.) (court concludes that defendant's fraudulent misrepresentation allegations could rise to the level of CUTPA violation in a non-UCC action involving a lease).
However, the cases relied upon by plaintiff are distinguishable from the present case because none of the aforementioned cases involve product failures. The U.S. District Court cases from Connecticut cited by defendant are more analogous to the present case. Defendant's cases involve situations in which a product failed, and in which the court analyzed the viability of plaintiffs' non-contract claims in terms of Connecticut's Product Liability Act and the commercial loss doctrine espoused in the East River case.
Generally, 42a-1-103 of the Connecticut Uniform Commercial Code provides that:
 Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and CT Page 8230-R the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
Section 42a-2-721 of the Code further provides that:
 Remedies for material misrepresentation or fraud include all remedies available under this article for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.
Plaintiff argues that these provisions preserve its right to maintain a common law action for fraud in the inducement to contract. Plaintiff's misrepresentation claim (count four) incorporates the allegations contained in count one (breach of contract), and plaintiff's CUTPA claim (count six) incorporates the allegations of count five (breach of repair or replace warranty). Neither count four, nor count six, allege any additional facts. CT Page 8230-S
The Official Comment to 42a-2-721 explains that the purpose of this section is as follows:
 To correct the situation by which remedies for fraud have been more circumscribed than the more modern and mercantile remedies for breach of warranty. Thus the remedies for fraud are extended by this section to coincide in scope with those for non-fraudulent breach. This section thus makes it clear that neither rescission of the contract for fraud nor rejection of the goods bars other remedies unless the circumstances of the case make the remedies incompatible.
R. Anderson, Uniform Commercial Code (3d ed.), p. 56, quoting Official Code Comment.
Here, the court finds that the issue of plaintiff's available remedies under 42a-2-721 is irrelevant since that plaintiff's noncontract claims are only variations of its breach of contract and warranty claims. In Stone Safety Corporation v. Rubatex, supra, the court recognized that plaintiff's tort and and CUTPA CT Page 8230-T claims were a "recasting" of its contract counts, and the court observed that:
 If plaintiff alleged a misrepresentation or CUTPA violation that amounted to something other than a claim of breach of warranty, the argument that the tort and CUTPA claims should stand in order to protect public interest would be stronger. Here, however, all of the wrongs alleged contributed to plaintiff's loss of the benefit of its bargain. In such a situation, the UCC provides a fully adequate remedy.
Id., 37-38.
Section 2-721 of the UCC provides the remedies that may be available when a party properly asserts a misrepresentation aim in addition to its breach of contract claim.[1] Plaintiffs in this case rely upon the same alleged representations in their breach of contract count as they do in their misrepresentation and CUTPA counts. (See Revised Complaint, paras. 8, 9, 25, 30). Under these circumstances, their latter two claims are properly subject to a motion to strike. Because plaintiffs have no assertable misrepresentation claim under which they CT Page 8230-U can recover, the issue of what remedies are available for such a claim under UCC 2-721 is irrelevant.
In addition, the comment to UCC 2-271 provides that remedies can be barred where "the circumstances of the case make the remedies incompatible." See Hillman, para. 9.06, pp. 9-46-9-47. In a situation such as this one — involving commercial parties and economic losses suffered as a result of an alleged product failure — is precisely the type of circumstance where such misrepresentation and breach of contract remedies are incompatible.
Accordingly, defendants' motion to strike count four and count six of the revised complaint is granted.
Dorsey, STATE TRIAL REFEREE